PER CURIAM.
Appellant, Florida East Coast Railway Company, appeals an adverse partial summary judgment determining its lease with Holiday Inns, Inc. to be in full force and effect.
On December 31, 196S Florida East Coast Railway Company (hereinafter referred to as FEC), as lessor, and Holiday Inns, Inc. (hereinafter referred to as Holiday Inn), as lessee, entered into a 99 year net percentage lease of a parcel of FEC’s property on the east side of Biscayne Boulevard between 7th and 8th Streets in the City of Miami. The lease required Holiday Inn to pay all taxes and construct at its own cost a 10 story motel containing a minimum of 250 rooms. With respect to the commencement of construction the lease provided:
“That said building work must be commenced and the conditions precedent to the commencement of the work as described hereinabove and hereinafter must *665 be complied with by the Lessee within a period of one (1) year from the date of this lease; PROVIDING, HOWEVER, that if the Lessee is delayed in good faith and after the exercise of due diligence on its part in the commencement of the work of construction and in complying with the conditions precedent to the commencement of such work of construction, by Act of God or the public enemy, or by governmental restriction upon the use of labor and/or materials (or by general strikes or by other conditions beyond the control of the lessee) to such extent that the work cannot be commenced and the conditions precedent to the commencement of such work cannot be complied with by the time herein-above set forth, then the time for commencement of the work will be extended for a period of time equivalent to the actual period of such delay so caused;
PROVIDED, HOWEVER, that nothing herein contained shall be construed as authorizing the Lessee to unreasonably delay the preparations of the plans and the making of arrangements to comply with the conditions precedent to the commencement of construction with the effect that, as a result of such delay, circumstances have occurred which make it impossible for the Lessee to commence the building and to comply with the conditions precedent to the commencement of building which would not have occurred had the Lessee exercised due diligence promptly in the commencing and doing of such things. Said building will be completed within two (2) years from the date of commencement of the work, subject to conditions beyond the control of Lessee.”
FED did not, prior to or during the negotiation of the lease, inform Holiday Inn that it owned fee title to the easterly 50 feet of Biscayne Boulevard (one of Miami’s busiest thoroughfares) immediately adjoining the westerly frontage of the leased property. This 50 foot strip, which constituted the means of ingress and egress to Holiday Inn’s leasehold, was being used by the public by virtue of a lease from FEC to the City of Miami.
In 1966 FEC cancelled its lease with the City of Miami for the 50 feet of roadway fronting Holiday Inn’s leasehold, and in 1967 instituted litigation against the City for return of this strip of roadway or in the alternative for damages by virtue of inverse condemnation. Thereafter, when Holiday Inn presented its plans for construction of the motel to the City of Miami, the City refused to issue a permit without a written assurance that there was available to the leased property public access to and from a public street. An agreement with respect to public access was worked out between Holiday Inn and the City of Miami. However, FEC refused to approve it and continued to prosecute its inverse condemnation suit which in 1970 finally terminated in FEC’s favor. In September 1971, the City of Miami filed eminent domain proceedings against all of FEC’s property bordering Biscayne Boulevard including Holiday Inn’s leasehold. Approximately 60 days thereafter, FEC served written notice of cancellation of the lease on Holiday Inn which continued in its attempts to obtain a building permit.
In response, Holiday Inn filed the instant suit to enjoin FEC from trespassing on the leased property and to recover damages. FEC counterclaimed for cancellation of the lease and each party moved for summary judgment. Partial summary judgment holding the lease to be in good standing was entered, and FEC perfected this interlocutory appeal.
FEC basically argues that material issues of fact exist as to whether Holiday Inn exercised good faith and due diligence in attempting to secure a building permit, and whether FEC waived its right to cancel the lease.
The record presented to this court clearly demonstrates the good faith and *666 due diligence exercised on the part of Holiday Inn to obtain a building permit from the City of Miami and, further, it primarily was the actions of FEC that thwarted Holiday Inn’s attempts to receive a building permit.
With respect to the issue of FEC’s waiver of its right to cancel the lease, here again the record undisputedly reflects that FEC accepted the benefit of payment by Holiday Inn of the ad valorem taxes on the leased property for the years 1967, 1968, 1969, 1970, 1971 and 1973; made no proffer to return these tax payments; and attempted to cancel the lease following and not preceding the institution by the City of Miami of eminent domain proceedings against FEC’s Biscayne Boulevard property including Holiday Inn’s leasehold. Cf. Wing, Incorporated v. Arnold, Fla.App. 1958, 107 So.2d 765.
Affirmed.